[Cite as *State v. Ferrante*, 196 Ohio App.3d 113, 2011-Ohio-4870.]

IN THE COURT OF APPEALS OF MONTGOMERY COUNTY, OHIO

THE STATE OF OHIO,                         :

     Appellee,                            :         C.A. CASE NO. 24344

v.                                         :         T.C. CASE NO. 10CR214

FERRANTE,                                  :         (Criminal Appeal from
                                                 Common Pleas Court)
     Appellant.                          :

. . . . . . . . .

O P I N I O N

Rendered on the 23rd day of September, 2011.

. . . . . . . . .

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and Laura M. Woodruff, Assistant Prosecuting Attorney, for appellee.

D. K. Rudy Wehner, Montgomery County Public Defender, and Adelina E. Hamilton, Assistant Public Defender, for appellant.

. . . . . . . . .

GRADY, Presiding Judge.

{¶ 1} Defendant, Jessica Ferrante, appeals from her conviction for possession of heroin, less than one gram, a felony of the fifth degree in violation of R.C. 2925.11(A). Defendant's conviction, which includes a sentence of five years of community-control sanctions, was entered on defendant's no-contest plea after the trial court denied her motion to suppress evidence.

{¶ 2} Defendant appealed to this court from her conviction and sentence. She

challenges only the trial court's decision overruling her motion to suppress evidence.

{¶ 3} When considering a motion to suppress, the trial court assumes the role of the trier of facts and is therefore in the best position to resolve factual questions and evaluate the credibility of the witnesses. *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Id. Accepting those facts as true, the appellate court must then independently determine, without deference to the trial court's conclusion, whether those facts satisfy the applicable legal standard. Id.

{¶ 4} In overruling defendant's motion to suppress evidence, the trial court made the following findings of fact:

{¶ 5} "Deputy Walters has worked for the Sheriff's department for six years. His assigned duty is road patrol, assigned to the Harrison Township area. On the day at issue, Deputy Walters was working alone on the 2:00 p.m. to 10:00 p.m. shift, wearing the uniform of the day and driving a marked cruiser.

{¶ 6} "At 4:30 p.m., Deputy Walters was in the area of Salem and Falmouth. Deputy Walters personally has made arrests in this area, which he describes as an area high in crime and drug related activity. Deputy Walters observed a red 1994 Olds Cutlass traveling northbound on Salem Avenue. The vehicle made a sudden lane change without signaling. The Cutlass was then tailgating another vehicle. Deputy Walters thought the sudden lane change may have been for the purpose of turning into a business along Salem Avenue. Deputy Walters followed the Cutlass for a quarter of a mile, with the Cutlass not turning off of Salem Avenue.

{¶ 7} "Deputy Walters initiated a traffic stop and approached the vehicle. He asked the driver, Defendant, if any weapons were in the car. Defendant said no. Deputy Walters explained that he routinely asks that question in this particular area.

{¶ 8} "Deputy Walters checked Defendant's driver's license status. In doing so, he noted that Defendant had a prior arrest for trafficking in drugs. He also noted that Defendant lived in Greenville, Ohio. Deputy Walters asked Defendant what had brought her to the area. Defendant responded that she was picking up her son from daycare. Indeed, Defendant's two and a half year old son was in the car with her.

{¶ 9} "According to Deputy Walters, during the stop, Defendant appeared overly nervous. Defendant's hands were shaking. Additionally, Defendant's rationale for being in the area seemed unreasonable to Deputy Walters, given the distance between the area and Greenville. On the basis of the totality of these circumstances, Deputy Walters asked Defendant for consent to search her vehicle, to which Defendant replied 'yea, you search it.'

{¶ 10} "Defendant was placed in Deputy Walters' cruiser for officer safety while he searched Defendant's car. Defendant was not patted down. Defendant's son remained in the Olds. Deputy Walters found a cigarette pack in a CD compartment of the vehicle. Inside the cigarette pack, Deputy Walters observed what he believed was heroin.

{¶ 11} "When Deputy Walters located the heroin, Defendant was placed under arrest. The drugs were sent to the crime lab and Defendant's car was towed. Defendant received two traffic citations, one for failure to signal the lane change and the other for following too close. Defendant was not advised that she could deny consent to search. Deputy Walters testified that he asked for Defendant's consent simultaneously with giving Defendant the

traffic citations."

First Assignment of Error

{¶ 12} "The trial court erred to the defendant-appellant's prejudice when it overruled her motion to suppress because the defendant-appellant was illegally detained when the officers exceeded the scope and purpose of the original traffic stop."

Second Assignment of Error

{¶ 13} "The trial court erred to the defendant-appellant's prejudice when it overruled her motion to suppress because the search of her vehicle was without free and voluntary consent or, alternatively, void pursuant to an unlawful seizure."

{¶ 14} Defendant does not challenge her initial traffic stop. That stop was lawful because it was based upon probable cause that defendant had committed two violations of the traffic laws that Deputy Walters observed, changing lanes without signaling and following the vehicle ahead too closely. *Dayton v. Erickson* (1996), 76 Ohio St.3d 3, 665 N.E.2d 1091. What defendant does argue in these related assignments of error is that Deputy Walters illegally expanded the scope and duration of the original traffic stop when he asked defendant for consent to search her vehicle while simultaneously returning her driver's license, registration, and proof of insurance and giving her the completed traffic citation, and that as a result of that illegally continued detention, defendant's consent to search her vehicle was not voluntary.

{¶ 15} In *State v. Robinette* (1997), 80 Ohio St.3d 234 (*Robinette III*), the Ohio Supreme Court stated in the syllabus:

{¶ 16} "1. When a police officer's objective justification to continue detention of a

person stopped for a traffic violation for the purpose of searching the person's vehicle is not related to the purpose of the original stop, and when that continued detention is not based on any articulable facts giving rise to a suspicion of some illegal activity justifying an extension of the detention, the continued detention to conduct a search constitutes an illegal seizure. *(State v. Robinette* (1995), 73 Ohio St.3d 650, 653 N.E.2d 695, paragraph one of the syllabus, modified.)

{¶ 17} "2. Under Section 14, Article I of the Ohio Constitution, the totality-of-the-circumstances test is controlling in an unlawful detention to determine whether permission to search a vehicle is voluntary. (*State v. Robinette* (1995), 73 Ohio St.3d 650, 653 N.E.2d 695 [(*Robinette I*)], paragraph two of the syllabus, vacated.)

{¶ 18} "3. Once an individual has been unlawfully detained by law enforcement, for his or her consent to be considered an independent act of free will, the totality of the circumstances must clearly demonstrate that a reasonable person would believe that he or she had the freedom to refuse to answer further questions and could in fact leave. (*Florida v. Royer* (1983), 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229; *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854, followed.)"

{¶ 19} In *State v. Wilburn*, 188 Ohio App.3d 384, 2010-Ohio-3536, at ¶ 12, this court stated:

{¶ 20} " 'A police officer's request for consent to search a vehicle stopped for a traffic violation is valid if it is made, and voluntary consent is obtained, during the period of time reasonably necessary to process the traffic citation; in other words, while the driver is lawfully detained for the traffic violation. *State v. Loffer,* Montgomery App. No. 19594,

2003-Ohio-4980[, 2003 WL 22149647]; *State v. Swope* (Nov. 9, 1994), Miami App. No. 93CA46[, 1994 WL 619748]. On the other hand, once a traffic citation is issued and the purpose of the original stop is completed, the lawful basis for the detention ceases. If police thereafter seek consent to search the vehicle absent some reasonable, articulable suspicion of criminal activity other than the traffic violation, the continued detention is unlawful. *State v. Retherford* (1994), 93 Ohio App.3d 586[, 639 N.E.2d 498]; *State v. Robinette* [1997], 80 Ohio St.3d 234[, 685 N.E.2d 762] * * *. Any consent to search obtained during an unlawful detention is tainted and may be invalid. *Retherford.* For such consent to be voluntary, the totality of the circumstances must demonstrate that a reasonable person would believe that he or she had the freedom to refuse to answer further questions and could, in fact, leave. *Robinette.*' *State v. Watts,* Montgomery App. No. 21982, 2007-Ohio-2411, 2007 WL 1454045, ¶ 12."

{¶ 21} Once Deputy Walters returned defendant's driver's license, registration, and proof of insurance to her and served her the traffic citation, the purpose of the original stop was completed, and the lawful basis for the detention of defendant ended. *Wilburn; Robinette*. Deputy Walters's subsequent or simultaneous request to search defendant's vehicle constituted an unlawful continued detention/seizure of defendant, unless Deputy Walters possessed a reasonable suspicion that defendant was engaged in some additional criminal activity other than the traffic violations. Id.; *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889.

{¶ 22} The state argues that Deputy Walters had a reasonable suspicion that defendant was engaged in illegal drug activity, which justified continuing defendant's detention for

further investigation, because (1) defendant was overly nervous during the traffic stop and her hands were shaking, (2) defendant was from Greenville, and her explanation for why she was in the Dayton area to pick up her child from daycare was suspicious and not reasonable due to the distance involved, (3) a check of defendant's license revealed that she had previously been arrested or convicted in Miami County for drug trafficking, and (4) the area of the traffic stop was a high crime, high drug activity area where Deputy Walters has made previous arrests for drug activity.

{¶ 23} In *State v. Maldonado* (Sept. 24, 1993), Montgomery App. No. 13530, this court observed:

{¶ 24} "Law enforcement officers are authorized to briefly detain and question persons whom they reasonably suspect are involved in criminal activity in order to investigate and resolve those suspicions. *Terry v. Ohio* [392 U.S. 1]. A suspicion is not reasonable merely because the officer possessed it; it must also, and necessarily, be one which a reasonable officer would maintain in the circumstances involved. Id. In any later judicial review, all the facts and circumstances before the officer must be given their due weight, and deference must be given to the officer's knowledge and experience when he or she acted on them. *State v. Freeman* (1980), 64 Ohio St.2d 291. Nevertheless, the officer must be able to articulate the grounds for the suspicion if it is later challenged. The officer may not rely on mere good faith or inarticulate hunches. *U.S. v. Porter* [*Poitier*] (8th Cir., 1987), 818 F.2d 679, cert. den. 484 U.S. 1006 (1984) [1988]. He must be able to articulate grounds from which a reasonable officer would infer that some specific criminal misconduct was afoot. Id.

{¶ 25}    "* * *

{¶ 26} "Since the decision of the Supreme Court in *State v. Bobo* (1988), 37 Ohio St.3d 177, police officers have more frequently cited the reputation of a vicinity as a 'high crime area' when articulating their reasons for a *Terry* stop performed there. This may reflect the greater law enforcement focus on street-level drug crime, which is usually subtle in its methods and often violent in its consequences. However, those idiosyncracies do not diminish the requirements of the Fourth Amendment or its interpretation in *Terry*. The facts and circumstances before the officer must yet reasonably suggest that some specific criminal misconduct is afoot. That specificity requirement focuses on the criminal character of the act, not on its setting. Acts that are essentially neutral or ambiguous do not become specifically criminal in character because they occur in a high crime area. Acts that are not specifically criminal in character do not become criminal because they are inapposite to their setting and, therefore, 'suspicious.' The setting can inform the officer's judgment, but it does not make the act criminal. In order to detain an individual to investigate for crime, some nexus between the individual and specific criminal conduct must reasonably exist and must be articulated by the officer."

{¶ 27} The fact that defendant was nervous and her hands were shaking when she was stopped by an officer is not particularly indicative of criminal conduct and is often innocent human behavior or ambiguous, at best. Defendant's explanation that she was in the area to pick up her child from daycare, when the child was in the vehicle with her, while perhaps odd in the sense that she would travel such a distance from Greenville to Dayton for child care, does not connote any criminal activity. The fact that at some time past defendant had been arrested or convicted of drug trafficking in Miami County is too stale to be of any value and,

in any event, does not show that defendant was at the time of this traffic stop engaged in illegal drug activity. Finally, the fact that the area where this traffic stop occurred is a high crime/drug activity area where Deputy Walters has made previous arrests does not, without more, demonstrate that defendant was then engaging in some specific illegal conduct such as drug activity.

{¶ 28} Simply stated, the totality of the facts and circumstances are not sufficient as a matter of law to give rise to a reasonable suspicion that defendant had been engaged in some specific criminal misconduct, such as drug activity. Accordingly, the continued detention of defendant to search her vehicle constituted an unlawful seizure. An illegal detention presumptively nullifies any consent that is a product of the detention. *Florida v. Royer* (1983), 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229; *State v. Byrd*, 185 Ohio App.3d 30, 2009-Ohio-5606, at ¶ 18.

{¶ 29} In *Robinette*, the Ohio Supreme Court held that voluntary consent, determined under the totality of the circumstances, may validate an otherwise illegal detention and search. Id., 30 Ohio St.3d at 241, 685 N.E.2d 762. However, once an individual has been unlawfully detained by law enforcement, for his or her consent to be considered an independent act of free will, the totality of the circumstances must clearly demonstrate that a reasonable person would believe that he or she had the freedom to refuse to answer further questions and could in fact leave. Id. at 245. The state has the burden to show, under the totality of the circumstances, that Defendant's consent to search her vehicle was a voluntary act of free will, as opposed to mere submission to an officer's superior position of authority, which is not sufficient to demonstrate a free and voluntary consent. *Royer; Robinette*.

**{¶ 30}** Deputy Walters's words did not give defendant any indication that she had the freedom to refuse to answer further questions and could in fact leave, but rather implied just the opposite. The timing of Deputy Walters's immediate transition from detaining defendant for the traffic violation and giving defendant the completed traffic citation and returning her driver's license to her, into his request to search defendant's vehicle, is troubling. As the Ohio Supreme Court observed in *Robinette I*, 73 Ohio St.3d at 654:

**{¶ 31}** "The transition between detention and a consensual exchange can be so seamless that the untrained eye may not notice that it has occurred. The undetectability of that transition may be used by police officers to coerce citizens into answering questions that they need not answer, or to allow a search of a vehicle that they are not legally obligated to allow."

**{¶ 32}** Upon giving defendant the completed traffic citation and returning her driver's license to her, Deputy Walters simultaneously asked defendant if he could search her vehicle. Walters did not tell defendant that she could refuse to consent to a search of her vehicle. The circumstances surrounding Walters's request to search defendant's vehicle were implicitly coercive. *Robinette*. When these factors are combined with a police officer's superior position of authority, a reasonable person would have felt compelled to submit to the officer's request. Id. From the totality of the circumstances, defendant merely submitted to "a claim of lawful authority" rather than consenting as a voluntary act of free will. Id. Because defendant did not freely and voluntarily consent to Deputy Walters's search of her vehicle, the evidence of heroin discovered during that search must be suppressed.

**{¶ 33}** Defendant's first and second assignments of error are sustained.

Third Assignment of Error

**{¶ 34}** "The trial court erred to the defendant-appellant's prejudice when it overruled her motion to suppress because the search of the cigarette pack contained within her vehicle was outside the scope of what a reasonable person would have understood the officer was searching for at the time."

**{¶ 35}** Defendant argues that even if the consent she gave to search her vehicle was voluntary, Deputy Walters's search of the cigarette pack he found inside the vehicle exceeded the scope of defendant's consent. Because this assignment of error is rendered moot by our disposition of the first and second assignments of error, we need not address it. App.R.12(A)(1)(c).

**{¶ 36}** Having sustained defendant's first and second assignments of error, the judgment of the trial court will be reversed, and this cause remanded for further proceedings consistent with this opinion.

Judgment reversed

and cause remanded.

FROELICH, and CANNON, JJ., concur.

TIMOTHY P. CANNON, J., of the Eleventh District Court of Appeals, sitting by assignment.