[Cite as *State v. White*, 2013-Ohio-3027.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No.   25396 |
| | : | |
| v. | : | Trial Court Case No.   2012-CR-866 |
| | : | |
| MEAGAN WHITE | : | (Criminal Appeal from |
| | : |  Common Pleas Court) |
| | : | |
| Defendant-Appellee | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the ____12th____ day of ____July____, 2013.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by R. LYNN NOTHSTINE, Atty. Reg. #0061560, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellant

VICTOR A. HODGE, Atty. Reg. No. 0007298, Assistant Public Defender, Law Office of the Public Defender, 117 South Main Street, Suite 400, Dayton, Ohio 45422
        Attorney for Defendant-Appellee

. . . . . . . . . . . . .

DONOVAN, J.

{¶ 1}     The State of Ohio appeals from the trial court's decision sustaining a motion to

suppress evidence of heroin that was found in Appellee Meagan White's vehicle after a traffic stop. The trial court found that the detaining officer did not articulate sufficient, reasonable facts objectively suggesting that criminal activity was afoot. As a result, it concluded that the officer had no legal basis to prolong White's detention beyond the traffic stop. The trial court also found that White did not give valid consent for the officer to search her vehicle.

{¶ 2}    In support of its appeal, the State contends that, based on the totality of the circumstances, White gave valid consent to the officer to conduct a search of her vehicle, because a reasonable person in White's position would have believed she was free to leave and free to refuse to answer further questions. The State argues that White's consent was a knowing and voluntary act of her own free will, and that the evidence obtained from the search of her vehicle should not have been suppressed. We conclude that the trial court did not err in suppressing the heroin found in White's vehicle. The officer's continued detention of White was unlawful, and White's consent was not freely and voluntarily given.

{¶ 3}    At the suppression hearing, Officer Lukas Hammermeister, a ranger with Five Rivers MetroParks, testified that on March 16, 2012, he was patrolling Wegerzyn Garden MetroPark in a marked cruiser, at approximately 4:45 p.m., when he observed Meagan White sitting in her parked car in a rear parking lot away from other vehicles and park buildings. As he drove by White's vehicle, Hammermeister observed White hunched over the center console of her vehicle. White sat up, and upon seeing the officer, she blurted a common epithet. Hammermeister believed White had a panicked look on her face. White thereafter got out of her vehicle and walked into the adjacent woods. Hammermeister, who has been a park ranger for ten years, stated that he has seen similar behavior in the park several times, and that he made

arrests based on such behavior. He did not identify the nature of such arrests, however. Hammermeister believed that White's actions were somehow suspicious.

{¶ 4} After observing White's behavior, Hammermeister parked behind a building and continued to watch White's vehicle. A few moments later, he observed White return to her vehicle from the woods and drive away. The officer followed White's vehicle, and when she stopped at a stop sign, he noticed that she had a broken tail light. Hammermeister then activated his cruiser's overhead lights and initiated a traffic stop. Initially he did not activate his siren. Hammermeister approached White's vehicle and immediately notified her that he had pulled her over due to a broken tail light. He asked for White's license and registration and confirmed that her information was valid and that she had no warrants. He noticed that White was nervous during the traffic stop, her voice was trembling and her hands were shaking. Hammermeister had called for back up prior to the stop and a second officer, Benjamin Supinger, arrived.

{¶ 5} Hammermeister gave White a verbal warning for the tail light violation and told her that she was free to leave. However, he immediately asked her "if it was okay [for him] to ask her a question before [he] got out of there." White answered, "Yes, you can ask me a question." Hammermeister then briefly recounted his observations of her behavior when he drove by her in the park, and he asked if she had anything illegal inside her car. White stated, "Not to my knowledge." Hammermeister then asked for permission to search her vehicle, and White verbally agreed. Hammermeister did not inform White that she could deny consent to search her vehicle and need not answer any questions.

{¶ 6} White stepped out of her vehicle, and Hammermeister began his search around the center console area. He found several sandy brown chunks which he suspected were heroin.

Hammermeister had made prior arrests for heroin, thus he was familiar with its appearance. The search also yielded a marijuana pipe. After locating the contraband, Hammermeister read White her *Miranda* rights, which she indicated she understood. He then asked her if what he had found was heroin, and she said yes.

{¶ 7} White was indicted on April 25, 2012, for possession of heroin, in an amount less than one gram, in violation of R.C. 2925.11(A). White moved to suppress the heroin as evidence against her on the grounds that Hammermeister had engaged in an unlawful search and seizure. On September 27, 2012, the trial court sustained the motion to suppress. The State now appeals the trial court's ruling.

{¶ 8} The State's sole assignment of error is as follows:

THE TRIAL COURT ERRED BY SUPPRESSING THE HEROIN FOUND IN MEAGAN WHITE'S VEHICLE BY HAMMERMEISTER AFTER THE PURPOSE OF THE TRAFFIC STOP HE HAD INITIATED WAS OVER WHERE THE OFFICER TOLD WHITE SHE WAS FREE TO LEAVE AND ALSO REQUESTED HER PERMISSION TO EVEN ASK HER A QUESTION PRIOR TO OBTAINING HER VOLUNTARY CONSENT TO THE SEARCH OF HER VEHICLE.

{¶ 9} The State argues that White gave valid consent for the officer to search her vehicle, and that under the totality of the circumstances, a reasonable person in White's position would have believed she was free to leave. This assertion is based on the fact that Hammermeister advised White that she was free to leave after the traffic stop ended, and that White subsequently consented to the officer's request to search her vehicle. Therefore, the State

claims that the heroin found in White's vehicle was the product of a lawful, consensual search, and that it should not have been suppressed by the trial court.

{¶ 10}    White argues that the totality of the circumstances did not establish reasonable articulable suspicion of criminal activity to justify detaining her beyond the scope of the concluded traffic stop.    Therefore, White claims her prolonged detention was unlawful, and the unlawful detention invalidates her consent.

{¶ 11}    "In ruling on a motion to suppress, the trial court 'assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses.' " *State v. Prater,* 2d Dist. Montgomery No. 24936, 2012-Ohio-5105, ¶ 7, quoting *State v. Retherford*, 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist.1994).    "As a result, when we review suppression decisions, 'we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence.    Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard.' " *Id*.

{¶ 12}    In sustaining White's motion to suppress, the trial court found the following relevant facts:

> On March 16, 2012, Officer Hammermeister observed a female[1] sitting in her parked car in the rear of the Wegerzyn Garden MetroPark parking lot.    As he drove past her car, Officer Hammermeister saw Defendant hunched over her center console, sit up and, upon seeing the Officer, blurt a common epithet. Officer Hammermeister believed Defendant appeared panicked.    He then watched

---

[1] Defendant here.

her exit her car and walk into the adjacent woods. Officer Hammermeister stated that this activity, somehow[2], was "suspicious" and "consistent with drug activity." Moments later he observed Defendant return to her car and drive off.

Officer Hammermeister followed Defendant's car as it left the park and noticed that only one tail light was working - which he knew was a traffic violation. He initiated a traffic stop.

Following the stop, Officer Hammermeister immediately informed Defendant that he had stopped her for the traffic violation and requested her license and registration. Officer Hammermeister testified that Defendant was nervous - her voice was trembling and her hands shaking. After running Defendant's information through LEADS and confirming Defendant had a valid license with no wants or warrants, Officer Hammermeister gave Defendant a verbal warning and told her she was free to leave. ***In short, the reason for the traffic stop was over.***

But then, Officer Hammermeister immediately asked: "Can I ask you a question before I get out of here?" When Defendant said "yes", Officer Hammermeister recounted his observations from the park, told Defendant he thought it odd she was nervous during a minor traffic stop and asked her permission to search the car - to which search Defendant agreed. Officer Hammermeister never informed Defendant she could deny consent to search and the State elicited no facts supporting a conclusion that Defendant's consent to

---

[2]Although he did not articulate just how this was so.

search was not the product of an illegal detention but rather an independent act of free will.

The search of the car yielded a marijuana pipe and heroin - the genesis of the instant matter.

{¶ 13}    The issues herein are whether White's continued detention was unlawful and whether her consent to search her vehicle was valid in light of the fact that Hammermeister requested her consent during a post-traffic-stop detention. In *State v. Ferrante*, 196 Ohio App.3d 113, 2011-Ohio-4870, 962 N.E.2d 383, ¶ 20 (2d Dist.), this Court explained:

A police officer's request for consent to search a vehicle stopped for a traffic violation is valid if it is made, and voluntary consent is obtained, during the period of time reasonably necessary to process the traffic citation; in other words, while the driver is lawfully detained for the traffic violation. *State v. Loffer*, Montgomery App. No. 19594, 2003-Ohio-4980[, 2003 WL 22149647]; *State v. Swope* (Nov. 9, 1994), Miami App. No. 93CA46[, 1994 WL 619748]. On the other hand, once a traffic citation is issued and the purpose of the original stop is completed, the lawful basis for the detention ceases. If police thereafter seek consent to search the vehicle absent some reasonable, articulable suspicion of criminal activity other than the traffic violation, the continued detention is unlawful. *State v. Retherford* (1994), 93 Ohio App.3d 586[, 639 N.E.2d 498]; *State v. Robinette* [1997], 80 Ohio St.3d 234[, 685 N.E.2d 762] * * *. Any consent to search obtained during an unlawful detention is tainted and may be invalid. *Retherford*. For such consent to be voluntary, the totality of the circumstances must demonstrate that a reasonable person would believe that he or

she had the freedom to refuse to answer further questions and could, in fact, leave. *Robinette*. *State v. Watts,* Montgomery App. No. 21982, 2007-Ohio-2411, 2007 WL 1454045, ¶ 12.

**{¶ 14}** "If the defendant 'consents' while being illegally detained, that consent is vitiated unless the government proves that it was not 'the product of the illegal detention,' but the 'result of an independent act of free will.' " *Retherford* at 596, citing *Florida v. Royer*, 460 U.S. 491, 501, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). "If, however, no illegal detention occurred, the state need not demonstrate that appellee's consent was an independent act of free will. Rather, the state must illustrate that the totality of the circumstances establish that appellee voluntarily consented to the search." *State v. Bennett*, 4th Dist. Ross No. 99 CA 2509, 2000 WL 821616,*4 (June 21, 2000), citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); 3 LaFave, *Search and Seizure,* Section 8.2(d) (3d Ed.1996).

**{¶ 15}** In general, "[l]aw enforcement officers may briefly stop and detain an individual for investigation if the officers have a reasonable, articulable suspicion that criminal activity may be afoot." *State v. Studley*, 2d Dist. Greene No. 2010 CA 81, 2011-Ohio-5563, ¶ 54, citing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 120 L.Ed.2d 889 (1968). *Robinette* provides:

> When a police officer's objective justification to continue detention of a person stopped for a traffic violation for the purpose of searching the person's vehicle is not related to the purpose of the original stop, **and when that continued detention is not based on any articulable facts giving rise to a suspicion of some illegal activity justifying an extension of the detention**, the continued detention to conduct a search constitutes an illegal seizure. (Emphasis

added.) *Id*., paragraph one of the syllabus.

{¶ 16} According to *Robinette*, a continued detention unrelated to the original traffic stop must be justified by articulable facts giving rise to a reasonable suspicion of criminal activity to be lawful. A reasonable suspicion of criminal activity "is something more than an unparticularized suspicion or mere hunch, but less than the level of suspicion required for probable cause." *Studley* at ¶ 54, citing *Terry*. "To satisfy that standard, police must be able to point to specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the intrusion. * * *." *Id*. This Court further stated in *Studley*:

"The propriety of an investigative stop or detention must be viewed in light of the totality of the surrounding facts and circumstances. *State v. Bobo* (1988), 37 Ohio St.3d 177. These circumstances must be viewed through the eyes of a reasonable and prudent police officer on the scene who must react to events as they unfold. * * * . While a series of events may appear innocent when viewed separately, taken together, they can warrant further investigation. * * * . For this reason, the court must take into consideration the officer's training and experience and understand how the situation would be viewed by the officer on the street. * * * ." *Studley*, 2d Dist. Greene No. 2010 CA 81, 2011-Ohio-5563 at ¶ 55, quoting *State v. Roberts*, 2d Dist. Montgomery No. 21221, 2006-Ohio-3042, ¶ 7-8.

{¶ 17} In this case, the trial court found that the continued detention of White after the traffic stop was an illegal seizure because Hammermeister did not articulate sufficient facts giving rise to a reasonable suspicion of criminal activity that would justify prolonging her detention. We agree with his determination. Clearly, the continued detention of White was unrelated to the traffic violation. The record indicates that Hammermeister observed the

following:

(1) White was leaning over the center console of her parked vehicle;

(2) When White sat up and Hammermeister drove by, White appeared panicked and blurted out a common epithet;

(3) White walked into the adjacent woods for a brief period of time, returned to her vehicle and drove away;

(4) During the traffic stop, White's hands were shaking and her voice was trembling.

These observations all appear innocent when viewed separately, and together do not give rise to reasonable and articulable suspicion of specific criminal activity. As the trial court found, the officer was acting on a "hunch."

{¶ 18} White correctly argues that Hammermeister did not have a reasonable suspicion of criminal activity to justify her continued detention, and she supports this argument with three similar cases, *Robinette*, *Retherford*, and *Ferrante*. In *Robinette*, the detaining officer lacked articulable facts or individualized suspicion of criminal activity. *Id*. at 241. The Supreme Court of Ohio held that the officer "was justified in briefly detaining Robinette in order to ask him whether he was carrying any illegal drugs or weapons." *Id*. However, it found that the officer "did not have any reasonably articulable facts or individualized suspicion to justify Robinette's further detention in order to ask to search his car." *Id.*

{¶ 19} In *Retherford*, the detaining officer based his suspicion of criminal activity on the fact that a motorist had luggage in the back seat, was mildly nervous, and was traveling out of town. *Id*. at 591-592. "[W]hen asked why he felt the need to ask [the motorist] for her consent to search her vehicle, [the officer] replied, '[m]ore so for any other reason the fact that I need the practice, to be quite honest.'" *Id*. at 592. In White's case, likewise, there were

minimal articulable facts, and the need for practice is as inadequate as a non-specific hunch.   In fact, Hammermeister acknowledged that the tail light warning gave him a basis to stop the vehicle "and dispel my suspicions of what I saw inside the vehicle."   All that he saw within the vehicle was White initially hunched over on a console and a nervous reaction upon making the stop.

{¶ 20}    In *Ferrante*, the detaining officer claimed that he asked to search the motorist's vehicle based on a prior drug offense, her nervous appearance, the fact that she was from out of town, and her presence in a high-crime area.  *Id.* at  ¶ 22.   This Court found that the "totality of the facts and circumstances [were] not sufficient as a matter of law to give rise to a reasonable suspicion that defendant had been engaged in some specific criminal misconduct, such as drug activity."  *Id*. at ¶ 28.   Likewise here, Hammermeister apparently concluded that White's conduct in the park was "somehow suspicious," as emphasized in the trial court's decision, but the officer did not articulate what, if any, criminal activity he believed was afoot.   In *Ferrante*, ¶ 26, this Court noted, "Acts that are essentially neutral or ambiguous do not become specifically criminal in nature because they occur in a high crime area."   The same principle holds true in a park in late afternoon.   In fact, no evidence was introduced that the Wegerzyn Garden MetroPark parking lot is a "high crime area."   In all instances absent a warrant, the facts must demonstrate some *specific* criminal misconduct is afoot.   Like the officers in *Robinette, Retherford* and *Ferrante*, Hammermeister had very weak or negligible specific objective and articulable facts to rely on when forming his suspicion of criminal activity.   This case is controlled by *Robinette*, *Retherford* and *Ferrante.*

{¶ 21}    Under the totality of the circumstances, Hammermeister did not articulate sufficient articulable facts giving rise to a suspicion of specific criminal activity which justified

his continued detention of White after the traffic stop. Hammermeister never mentioned that White's behavior was consistent with drug activity or any other crime. The State failed to elicit any testimony from Hammermeister regarding inferences and deductions that he made based upon his experience and specialized training other than "I think that there was maybe something more going on there." This was the State's burden, which was not met.[3] Therefore, the continued detention of White was unlawful.

{¶ 22} Regarding White's consent, we find that because White's post-traffic-stop detention was unlawful, her consent is not presumptively valid. Therefore, the State has the burden to prove that White's consent was an independent act of free will and not a product of the illegal detention. In *State v. Bennett,* 4th Dist. Ross No. 99 CA 2509, 2000 WL 821616 (June 21, 2000), * 9-10, the Fourth District Court of Appeals made the following observations about voluntary consent:

> * * * As the court explained in *Schneckloth*, 412 U.S. at 248-49, 93 S.Ct. 2041, 36 L.Ed.2d 854:
>
> [W]hen the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the

---

[3]It is unpersuasive to characterize movement in a vehicle in a park at 4:45 p.m. as "furtive" when no police contact has been initiated. Sitting and walking around in the park is likewise innocuous behavior.

prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent.

\* \* \*

Generally, courts should consider the following factors when determining if a defendant voluntarily consented to a search: (1) the age of the accused; (2) the accused's education and intelligence level; (3) the lack of any advice to the accused of constitutional rights; (4) the length of questioning; and (5) the use of physical punishment. *Schneckloth*, 412 U.S. at 226, 93 S.Ct. 2041, 36 L.Ed.2d 854. Moreover, "[i]n examining all the surrounding circumstances to determine if in fact the consent to search was coerced, account must be taken of subtly coercive police questions, as well as the possibly vulnerable subjective state of the person who consents." *Id.*, 412 U.S. at 229, 93 S.Ct. 2041, 36 L.Ed.2d 854.

\* \* \* "While knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge as the *sine qua non* of an effective consent." *Id.*, 412 U.S. at 227, 93 S.Ct. 2041, 36 L.Ed.2d 854. (Citations omitted.)

**{¶ 23}** In this case, the totality of the circumstances indicate that White's consent was not freely and voluntarily given. Hammermeister called for backup and the second officer, Supinger, stood on one side of the vehicle and Hammermeister the other during the stop. After the warning was issued, Supinger, who had returned to his cruiser, came back up to White's vehicle when he observed Hammermeister's continuing conversation with White. Being flanked by two officers certainly would lead a reasonable person to believe she was not free to disregard the officer's questions and pull off. Here, the transition between detention and

consensual exchange was so seamless that the untrained eye would not have noticed that it had occurred. The undetectability of that transition was used by these two officers to compel White into answering questions she need not answer, and consent to the search of her vehicle that she was not legally obligated to permit. See generally *Robinette*, quoting *State v. Robinette*, 73 Ohio St.3d at 654, 653 N.E.2d 695 (1995).

{¶ 24} For the foregoing reasons, the totality of the circumstances establish that White's consent was not freely and voluntarily given, and the State's sole assigned error is overruled. The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

FAIN, P.J., concurs.

WELBAUM, J., dissenting:

{¶ 25} I very respectfully dissent. There are two issues. Determination as to the validity of the post-traffic-stop detention affects the analysis of the consent issue.

I. THE POST-TRAFFIC-STOP DETENTION WAS LAWFUL DUE TO ARTICULABLE FACTS GIVING RISE TO A SUSPICION OF SOME ILLEGAL ACTIVITY.

{¶ 26} The trial court and the majority have concluded that the facts found by the trial court do not support reasonable, articulable suspicion of criminal activity sufficient to continue the detention beyond the duration of the lawful traffic stop. I accept the factual findings, but disagree with their legal conclusions.

{¶ 27} The Supreme Court of Ohio held:

When a police officer's objective justification to continue detention of a

person stopped for a traffic violation for the purpose of searching the person's vehicle is not related to the purpose of the original stop, and when that continued detention is not based on any articulable facts giving rise to a suspicion of some illegal activity justifying an extension of the detention, the continued detention to conduct a search constitutes an illegal seizure.  (*State v. Robinette* [1995], 73 Ohio St.3d 650, 653 N.E.2d 695, paragraph one of the syllabus, modified.)   *State v. Robinette*, 80 Ohio St.3d 234, 685 N.E.2d 762 (1997), paragraph one of the syllabus (*Robinette III*).

**{¶ 28}**    The Supreme Court of Ohio elaborated on the issue when it stated that:

If during the initial detention to ask the contraband question, the officer ascertained reasonably articulable facts giving rise to a suspicion of criminal activity, the officer may then further detain and implement a more in-depth investigation of the individual. * * *

In the case at bar, Newsome did not have any reasonably articulable facts or individualized suspicion to justify Robinette's further detention in order to ask to search his car. * * *  *Robinette III* at 241.

**{¶ 29}**    The majority opinion articulates the pertinent law regarding how to evaluate investigative detentions when it states that:

" 'The propriety of an investigative stop or detention must be viewed in light of the totality of the surrounding facts and circumstances * * * [as] viewed through the eyes of a reasonable and prudent police officer on the scene who must react to events as they unfold * * * [and] [w]hile a series of events may appear innocent when viewed separately, taken together, they can warrant further investigation. * *

\* For this reason, the court must take into consideration the officer's training and experience and understand how the situation would be viewed by the officer on the street. (Citation omitted).' " Majority Opinion, ¶ 16.

**{¶ 30}** The majority opinion sets forth the facts Officer Hammermeister gave to justify his actions. As noted in the syllabus of *Robinette III*, any articulable facts giving rise to a suspicion of some illegal activity will justify a post-traffic stop detention. Although each of White's actions may appear innocent individually, when viewed together, it was reasonable for Officer Hammermeister, as a trained police officer, to conclude that further investigation of White was warranted. Officer Hammermeister is not required to articulate that White's behavior is inconsistent with any particular crime. Rather, he is required to express "reasonably articulable facts giving rise to a suspicion of criminal activity \* \* \*." *Robinette III*, 80 Ohio St.3d at 241, 685 N.E.2d 762. Officer Hammermeister's factual basis for prolonging White's traffic stop was adequately articulated, and his suspicions of criminal activity were objectively reasonable. The facts he articulated and corollary objective level of suspicion are more persuasive than those found in the cases relied upon by the majority. I believe his actions were lawful under Fourth Amendment standards.

## II. THE POST-TRAFFIC-STOP DETENTION WAS REASONABLE.

**{¶ 31}** Secondly, when applying Fourth Amendment reasonableness standards in this case, several factors are noteworthy for purposes of balancing the liberty and societal interests. First, White was already lawfully detained due to the traffic stop. The sole issue is whether White's continued detention for the short time it took to ask her consent to search was reasonable under these facts.

{¶ 32}  In the absence of any reasonably articulable facts justifying a post-traffic-stop detention, the Ohio Supreme Court stated that:

> In the case at bar, we find that, pursuant to *Royer* and *Brown*, Officer Newsome was justified in briefly detaining Robinette in order to ask him whether he was carrying any illegal drugs or weapons pursuant to the drug interdiction policy, because such a policy promotes the public interest in quelling the drug trade.  *Robinette III* at 241, citing *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), and *Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979).

{¶ 33}  This language authorized Officer Hammermeister to extend any traffic stop detention to ask a motorist "[W]hether he was carrying any illegal drugs or weapons."  There is little, if any, Fourth Amendment intrusion or societal benefit when an officer also asks for consent to search.

{¶ 34}  Officer Hammermeister's request for consent was similar in duration and effect to the boilerplate question authorized by *Robinette III*.  Moreover, his request for White's consent to search was supported by reasonably articulable facts giving rise to his suspicion of some criminal activity as required by *Robinette III*.  I find that Officer Hammermeister's actions were reasonable under the Fourth Amendment and very respectfully dissent.

## III.  THE CONSENT WAS VALID.

{¶ 35}  Because White's post-traffic-stop detention was lawful, her consent is not presumptively invalid. Therefore, the State does not have the burden to prove that White's

consent was an independent act of free will and was not the product of the illegal detention. The State must only prove that the totality of the circumstances demonstrate that White voluntarily consented to the search.

{¶ 36}   As the court explained in *Schneckloth* [*v. Bustamonte,* 412 U.S. 218, 248-249, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)]:

[W]hen the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent. (Footnote omitted.)

Generally, courts should consider the following factors when determining if a defendant voluntarily consented to a search: (1) the age of the accused; (2) the accused's education and intelligence level; (3) the lack of any advice to the accused of constitutional rights; (4) the length of questioning; and (5) the use of physical punishment. *Schneckloth*, 412 U.S. at 226, 93 S.Ct. 2041, 36 L.Ed.2d 854. Moreover, "[i]n examining all the surrounding circumstances to determine if in fact the consent to search was coerced, account must be taken of subtly coercive police questions, as well as the possibly vulnerable subjective state of the person who consents." *Id*., 412 U.S. at 229, 93 S.Ct. 2041, 36 L.Ed.2d 854. *State v. Bennett,* 4th Dist. Ross No. 99 CA 2509, 2000 WL 821616, *9 (June 21, 2000).

**{¶ 37}** Furthermore, " '[w]hile knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge as the sine qua non of an effective consent.' " *Bennett* at *9-10, quoting *Schneckloth* at 227.

**{¶ 38}** In this case, the totality of the circumstances indicate that White's consent was freely and voluntarily given. There is nothing in the record establishing that White's age or intelligence level prevented her from understanding the nature of the detention or Officer Hammermeister's questions. The record indicates that White was cooperative, honest, sober, coherent, and communicative. Additionally, after Officer Hammermeister issued White a warning for the tail light violation, he told her that she was free to leave.

**{¶ 39}** The duration of the officer's questioning after the traffic stop was also brief, and there is no evidence of coercion. The officer requested permission to ask White another question, and she consented. The officer then recounted his observations of her prior to the traffic stop, and asked if she had anything illegal in her vehicle. She answered, "Not to my knowledge," and the officer followed up by asking for consent to search her vehicle. The officer's line of questioning was brief and straightforward, and the questions were not delivered in a forceful manner. Furthermore, the officer fully informed White of the underlying reasons for his request to search her vehicle when he shared his earlier observations of her. For the foregoing reasons, in my view, the totality of the circumstances establish that White's consent was freely and voluntarily given.

**{¶ 40}** I very respectfully dissent.

. . . . . . . . . . . . .

Copies mailed to:

R. Lynn Nothstine
Victor A. Hodge
Hon. Steven K. Dankof