[Cite as *State v. Hawkins*, 2013-Ohio-5458.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY   COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 25712 |
| Plaintiff-Appellee/Cross-Appellant | : | |
| | : | Trial Court Case No. 2011-CRB-2882 |
| v. | : | |
| | : | |
| CHRISTOPHER M. HAWKINS | : | (Criminal Appeal from |
| | : | Kettering Municipal Court) |
| Defendant-Appellant/Cross-Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 13th day of December, 2013.

. . . . . . . . . . .

JOHN D. EVERETT, Atty. Reg. #0069911, City of Kettering Prosecutor's Office, 2325 Wilmington Pike, Kettering, Ohio 45420
        Attorney for Plaintiff-Appellee/Cross-Appellant

BROCK A. SCHOENLEIN, Atty. Reg. #0084707, Flanagan, Lieberman, Hoffman & Swaim, 15 West Fourth Street, Suite 100, Dayton, Ohio 45402
        Attorney for Defendant-Appellant/Cross-Appellee

. . . . . . . . . . . . .

HALL, J.,

{¶ 1}   Christopher Hawkins appeals the trial court's decision not to suppress the pipe and marijuana that a police officer found on him. Because the officer conducted an investigatory

detention of Hawkins without reasonable suspicion of criminal activity, and because Hawkins's consent to the pat-down was not an independently voluntary act, we reverse.

**FACTS**

{¶ 2} Around 10:15 p.m. one December night, in 2011, Officer Jeff Benedictus and Officer Amy Pedro of the Kettering Police Department were on foot patrol on Aberdeen Avenue in Kettering, Ohio. The area was experiencing high drug activity, and Benedictus had made drug-related arrests there. The officers were on the sidewalk walking toward Shroyer Road when ahead they saw two men, one of whom was Hawkins, walking toward them. The two men left the sidewalk and cut across the grass toward the entrance to a four-unit apartment building at 520 Aberdeen. The officers, from the opposite direction, did the same, though they had not seen anything in particular to make them suspicious of the men.

{¶ 3} The paths of the two groups met on the front stoop. Officer Benedictus told the men to stop and then asked them for identification. Hawkins appeared quite nervous and was shaking, and it seemed to Benedictus that he wanted to go into the building. Benedictus asked Hawkins for permission to pat him down for weapons. When Benedictus put his hand on Hawkins's right front pants pocket, he felt a round, solid object. The nature of the object was not immediately apparent to Benedictus, so he asked Hawkins what it was. Hawkins responded by asking him to stop the pat down. Benedictus again asked what it was, and Hawkins replied, "a pipe." Benedictus understood "pipe" to mean "[a] marijuana smoking device," (Tr. 15), so he retrieved the object from Hawkins's pocket. During the pat-down, Officer Benedictus smelled raw marijuana coming from Hawkins. Benedictus asked Hawkins if he had any marijuana, and Hawkins said that he did. Benedictus then searched Hawkins and found the marijuana in his

jacket pocket. The officers cited Hawkins for possession of drug paraphernalia, a violation of R.C. 2925.14, and for possession of marijuana, a violation of R.C. 2925.11.

**{¶ 4}** Hawkins moved to suppress the pipe and marijuana. After a hearing, at which Officer Benedictus alone testified, the trial court overruled the suppression motion.[1] The court concluded that the initial encounter between Hawkins and the officers was a consensual one that evolved into an investigatory detention when Benedictus smelled the marijuana. The court also concluded that the pat-down was justified and that the raw marijuana smell coming from Hawkins constituted probable cause to search him.

**{¶ 5}** Hawkins appealed.

### ANALYSIS

**{¶ 6}** The sole assignment of error alleges that the trial court erred in overruling the motion to suppress the pipe and marijuana. In reviewing a motion-to-suppress ruling, we must accept the trial court's sufficiently supported findings of fact. *State v. Lewis*, 2d Dist. Montgomery No. 22726, 2009-Ohio-158, ¶ 17. But we must "'independently determine, as a matter of law, whether the facts meet the appropriate legal standard.'" *Id*., quoting *State v. Morgan*, 2d Dist. Montgomery No. 18985, 2002 WL 63196, *1 (Jan. 18, 2002).

**{¶ 7}** The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Hawkins contends that the interaction with the officers was contrary to these constitutional prohibitions.

---

[1] Hawkins had also moved to suppress the observations and opinions of Officer Benedictus and to suppress any statements that he made to the officers. The court overruled the motion with respect to the observations and opinions, noting that there was no testimony on this matter. The court sustained the motion with respect to any statements Hawkins made, finding that he was in custody just after the initial contact and was never told of his *Miranda* rights. Neither of these decisions is challenged in this appeal.

***The nature of the interaction***

**{¶ 8}** The initial issue here is whether the Fourth Amendment applies–whether Hawkins was "seized." The state contends that he was not, that the interaction between Officer Benedictus and Hawkins was, as the trial court concluded, a consensual encounter. Conversely, Hawkins contends that he was "seized," that the interaction was an investigatory detention.

**{¶ 9}** "Consensual encounters occur when the police merely approach a person in a public place and engage the person in conversation, and the person remains free not to answer and to walk away." *Lewis* at *¶* 21, citing *United States v. Mendenhall*, 446 U.S. 544, 553, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). "The Fourth Amendment guarantees are not implicated in such an encounter * * *." *State v. Taylor*, 106 Ohio App.3d 741, 747-749, 667 N.E.2d 60 (2d Dist.1995), citing *Mendenhall* at 554. They are implicated, though, in an investigatory detention. "An individual is subject to an investigatory detention when, in view of all the circumstances surrounding the incident, by means of physical force or show of authority, a reasonable person would have believed that he was not free to leave or is compelled to respond to questions." *Lewis* at *¶* 22, citing *Mendenhall* at 553, and *Terry* at 16, 19. A police officer telling a person to stay in a particular place constitutes an investigatory detention. *State v. Sturtz*, 5th Dist. Coshocton No. 09 CA 02, 2009-Ohio-6937, ¶ 46 (finding that though the officer testified that he was just talking to the defendant, he also testified that, at one point, he told the defendant to "stay over there" while he talked with other officers).

**{¶ 10}** The officers here did not simply happen to walk past Hawkins and decide to ask him a few questions. They left the sidewalk and cut across the grass so that they could intercept him. Officer Benedictus told Hawkins to stop and asked him for identification. Tellingly,

Benedictus more than once told Hawkins not to enter the building, to stay where he was. More than just *feeling* not free to leave, Hawkins plainly was not free to leave–just as Benedictus testified:

Q. You told him to stop at the front door so you could identify him.

A. Yes sir.

Q. Was he free to go at that point?

A. No sir.

* * *

Q. It says in your report a second time, he again turned toward the front door of the building, and you advised him to stop.

A. Yes sir.

Q. So clearly again, he's not free to leave at this point. Is that a yes?

A. Yes sir.

(Tr. 28-29). We conclude this was an investigatory detention.

### *Reasonable suspicion?*

{¶ 11} A police officer may temporarily detain a person in order to investigate possible criminal activity if the officer has reasonable, articulable suspicion that "criminal activity may be afoot." *Terry*, 392 U.S. at 30, 88 S.Ct. 1868, 20 L.Ed.2d 889. "We determine the existence of reasonable suspicion by evaluating the totality of the circumstances * * *." *Lewis*, 2009-Ohio-158, at ¶ 22.

{¶ 12} The circumstances here are these: the area in which Hawkins was stopped had higher than normal drug activity; during the encounter, Hawkins appeared nervous and was

shaking, and it seemed to Officer Benedictus that he wanted to leave by entering the building; before the encounter, the officers saw nothing suspicious. But the nervousness and desire to leave were observations made after initiation of what we have already found to be an investigatory detention. Additionally, in *State v. Ferrante*, 196 Ohio App.3d 113, 2011-Ohio-4870, 962 N.E.2d 383 (2d Dist.), when analyzing nervousness during a traffic stop we commented: "The fact that defendant was nervous and her hands were shaking when she was stopped by an officer is not particularly indicative of criminal conduct and is often innocent human behavior or ambiguous, at best." *Id.* ¶ 27. Undoubtedly nervous behavior is a factor that may be considered by a police officer as part of a reasonable articulable suspicion, *State v. Atchley*, 10th Dist. No. 07AP–412, 2007-Ohio-7009, ¶ 14,or a factor to extend an otherwise lawful detention, *State v. Nelson*, 2nd Dist. Montgomery No. 22718, 2009 -Ohio- 2546, ¶ 40. But if a stop has already been made unsupported by reasonable articulable suspicion, nervousness after the stop, or a desire to leave cannot be used to support the initial detention. We conclude that Hawkins' initial detention was unlawful.

### The pat-down, or frisk

{¶ 13}  A police officer who reasonably believes that a person is armed or a danger to the officer or others may conduct a protective pat-down, or frisk, for concealed weapons. *Terry*. But such a frisk is permitted only if the officer was in the person's presence lawfully. *See State v. Todd*, 2d Dist. Montgomery No. 23921, 2011-Ohio-1740, ¶ 29 (saying that an officer may conduct a frisk "[o]nce a *lawful* investigatory stop has been made" (Emphasis added.)). The police officers here did not articulate a legitimate basis for stopping Hawkins.  This means that even if the officers had reasonable suspicion to support their frisk, the frisk would likewise be

unlawful. The record does not support a reasonable suspicion that Hawkins was armed or dangerous so that concept cannot support the pat down. Moreover, a smell of raw marijuana might have supplied probable cause to initiate a search but the odor was detected during the pat down which was after the improper investigatory detention and discovered as a result of it. Accordingly the detection of the odor cannot be the basis for a search of Appellant. *Wong Sun v. United States*, 371 U.S. 471, 484–85, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

{¶ 14}   The frisk may yet be valid, though, if, as the state contends, Hawkins voluntarily consented to it. "An illegal detention presumptively nullifies any consent that is a product of the detention." *Ferrante*, 196 Ohio App.3d 113, 2011-Ohio-4870, 962 N.E.2d 383, at ¶ 28, citing *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229   (1983). But voluntary consent that is an independent act of free will may rebut the presumption and validate an otherwise illegal search. *Id.* at ¶ 29, citing *State v. Robinette*, 80 Ohio St.3d 234, 685 N.E.2d 762 (1997). When a detention is illegal, Ohio courts use the totality-of-the-circumstances test to determine whether consent to search is voluntary: "Once an individual has been unlawfully detained by law enforcement, for his or her consent to be considered an independent act of free will, the totality of the circumstances must clearly demonstrate that a reasonable person would believe that he or she had the freedom to refuse to answer further questions and could in fact leave." (Citations omitted.) *Robinette* at 245. "'[T]he State has the burden of proving that the necessary consent was obtained and that it was *freely and voluntarily given, a burden that is not satisfied by showing a mere submission to a claim of lawful authority*.'" (Emphasis sic.) *Id.* at 243, quoting *Royer* at 497.

{¶ 15}   "[A]n illegal arrest," Professor LaFave has said, "bears uniquely on the question

of voluntariness, for it constitutes a false claim of authority over the person in much the same way that reliance upon an illegal search warrant constitutes a false claim of authority over the premises named in the warrant." 4 Wayne R. LaFave, *Search and Seizure*, Section 8.2(d) (5th Ed.2012). The same may be said of an illegal investigatory detention. In our view the state failed to prove that Hawkins's consent was an independent act of free will. Officer Benedictus had told Hawkins more than once that he could not leave, so when Benedictus asked Hawkins for consent to frisk him, a reasonable person in Hawkins's shoes would not believe that he was free to decline. It appears, rather, that Hawkins's consent to the frisk was merely his acquiescence to Benedictus's show of authority.

{¶ 16}   The pat-down of Hawkins was not supported by reasonable suspicion that he was armed or dangerous, cannot be supported by probable cause, and was not based on an independent act of voluntary consent. Accordingly, because the pipe and marijuana were derived from the pat-down and the search, they must be excluded from evidence. *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), *Wong Sun,* supra.

{¶ 17}   The sole assignment of error is sustained.

{¶ 18}   The trial court's judgment is reversed with respect to the suppression of the pipe and marijuana. This cause is remanded for further proceedings consistent with this opinion.

. . . . . . . . . . . . .


FAIN, P.J., and GALLAGHER, J., concur.


(Hon. Eileen A. Gallagher, Eighth District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

John D. Everett
Brock A. Schoenlein
Hon. Thomas M. Hanna