[Cite as *State v. Blanks*, 2014-Ohio-1658.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

STATE OF OHIO

       Plaintiff-Appellee

v.

ANTHONY BLANKS

       Defendant-Appellant

Appellate Case No. 25802

Trial Court Case No. 2013-CR-471/1

(Criminal Appeal from
 Common Pleas Court)

. . . . . . . . . . .

O P I N I O N

Rendered on the 18th day of April, 2014.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by MATTHEW T. CRAWFORD, Atty. Reg. #0089205, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

WILLIAM O. CASS, JR., Atty. Reg. #0034517, 135 West Dorothy Lane, Suite 209, Kettering, Ohio 45429
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FAIN, J.

{¶ 1}    Defendant-appellant Anthony Blanks appeals from his conviction and sentence, following a no-contest plea, for Improper Handling of a Firearm in a Motor Vehicle, in violation of R.C. 2923.16(B), a felony of the fourth degree.   Blanks contends that the trial court erred by not suppressing his statement that a firearm and magazine found in the car he was driving were his, because it was in response to custodial interrogation not preceded by *Miranda* warnings.   He further contends that the search of his car was not justified, so that the trial court should have suppressed the firearm and magazine seized. Finally, he contends that all evidence seized should have been suppressed, since it was found as the result of an unreasonably prolonged traffic stop.

{¶ 2}    We conclude that the trial court could find, as it did, that the statement Blanks made was not in response to interrogation; that the magazine was not found as the result of a search; that the firearm was found as the result of a consensual search; and that the stop, which began as a traffic stop, was not unreasonably prolonged after the police officers became aware of the presence in the car of a loaded magazine that did not fit a firearm retrieved from the waistband of a passenger who was the subject of an active warrant, and after Blanks had given inconsistent answers to the officers' questions whether there was another firearm in the car, by which time the traffic stop had evolved into an investigatory stop supported by reasonable and articulable suspicion of weapons violations.

{¶ 3}    Accordingly, the judgment of the trial court is Affirmed.


## I.   The Traffic Stop and Arrest

{¶ 4}    Matthew Lykins, a certified police officer for the Dayton Department of

Aviation, was on patrol in the area of the Dayton airport in a marked cruiser just after midnight in February 2013. He saw a green Mazda, which had left the immediate area of the airport, make an improper U-turn, and thereafter clocked it at 54 miles per hour in a 40 mph zone. Officer Lykins stopped the Mazda, which Blanks was driving. Larry Anderson, Jr., was a passenger in the front seat. A third man, an arriving passenger they had picked up at the airport, was in the back seat.

{¶ 5} As was his custom, Officer Lykins obtained identification from all three occupants of the car. When Lykins ran the identifications, he found an outstanding warrant on Anderson. Through his dispatcher, Lykins checked to see if the warrant to arrest Anderson was active. Within five minutes, Officer Lykins received confirmation, "from Miamisburg courts advising that the warrant was confirmed and that they did indeed want Mr. Anderson secured and taken to the Montgomery County Jail."

{¶ 6} Officer Lykins had also determined that there was a warrant to arrest the backseat passenger, but it appeared to be a "minor warrant," out of Scioto County, and Lykins did not bother to check it, because he had no intention of taking action on it.

{¶ 7} Meanwhile, Officer Charles Wright, who was also on patrol in the area of the Dayton airport, had heard Lykins use the code on the radio that the subject of an active warrant had been found, which would require apprehension of the individual subject to the warrant. Lykins and Wright had been working the airport beat together for six years; it was their custom to provide backup to each other whenever someone was going to have to be removed from a vehicle. Wright proceeded to Lykins's location; it took him about five minutes to get there.

{¶ 8} Officer Lykins returned to the Mazda from his cruiser, and "asked Mr. Blanks

and all the occupants of the vehicle if there was anything in the vehicle I need to be made aware of." All three men responded in the negative. Lykins repeated the question, this time using some examples: "Any guns, drugs, knives, bombs, anything illegal?" Again, all three men responded in the negative.

{¶ 9} Officer Lykins asked Blanks to turn off the ignition, and put the keys up on the dashboard. Blanks complied. Lykins, who was standing at the front-passenger side of the Mazda, asked Anderson to get out of the car. Anderson broke eye contact, looking straight ahead. By this time, Officer Wright had arrived. Lykins asked Anderson a second and third time to get out of the car, grabbing Anderson's shoulder on the third request. Lykins was losing sight of Anderson's hands, so Lykins grabbed Anderson's hands.

{¶ 10} As Officer Lykins was getting ready to handcuff Anderson, Lykins asked Anderson "if there is anything that I need to be made aware of." Anderson replied, "Yeah. I have a fire – I have a gun in my waistband." Officer Wright then retrieved a Glock 22, 40 caliber handgun from Anderson's waistband. Anderson was arrested on the outstanding warrant, for Carrying a Concealed Weapon, and for, in Officer Lykins's words, "felons under disability." Anderson was placed in Lykins's cruiser. It was now between twenty and twenty-two minutes after the initial stop.

{¶ 11} Officer Wright gave Officer Lykins the handgun retrieved from Anderson's waistband, to put in Lykins's cruiser. While Lykins was taking the handgun to his cruiser, Officer Wright asked Blanks "if there was anything else in the vehicle we need to be made aware of." Initially, Blanks "said he had a firearm and a magazine in the center console."

{¶ 12} Officer Wright then asked Blanks, "you have a firearm and a magazine in the

console," and Blanks replied, "no, just a magazine." Blanks then removed a loaded magazine from the center console. Wright retrieved the magazine and determined that it was not "similar" to the Glock handgun that Anderson had had in his waistband. Because of Blanks's inconsistent statements about whether there was another firearm in the car, and also because, in Wright's experience, a loaded magazine is usually "paired together" with a firearm, Wright asked Blanks and the remaining passenger to get out of the car, in order to separate them from any firearm that might be in the car. By this time, Officer Lykins was returning to the car.

{¶ 13} Blanks and his other passenger were then patted down for weapons; nothing was found. While Lykins and the other passenger were standing in front of the Mazda, Officer Lykins asked Blanks if there was a firearm in the car, and Blanks answered in the negative. Lykins then asked Blanks: "Do you have a problem with us searching?" or "We can go ahead and search the vehicle and we won't find a gun?" Blanks replied: "Go ahead and do what you got to do."

{¶ 14} As Officer Lykins was walking to the still open driver's door, he asked Blanks "if I was going to find anything in the car such as a gun." At this time, Blanks was standing in front of the Mazda. He was not handcuffed. Blanks told Lykins: "You'll probably find a firearm or gun underneath the driver's seat." Lykins found a Taurus 40 caliber firearm under the driver's seat. It matched the magazine that had been retrieved from the center console. Lykins estimated that his search of the vehicle began no more than 25 minutes after the initial stop.

{¶ 15} Blanks was then placed in handcuffs. As Blanks was being handcuffed, or right after, Blanks said: "The gun and the stuff are mine. They're legit." This statement was not in response to a question.

{¶ 16}  Blanks was placed in Wright's cruiser.  Wright advised Blanks "briefly" of his *Miranda* rights.  Later, Officer Lykins read both Blanks and Anderson their *Miranda* rights, when they were in a holding cell.   No statements were thereafter made.

## II.   The Course of Proceedings

{¶ 17}  Blanks was charged by indictment with one count of Improper Handling of a Firearm in a Motor Vehicle, in violation of R.C. 2923.16(B), a felony of the fourth degree, and one count of Carrying a Concealed Weapon, in violation of R.C. 2923.12(A)(2), a felony of the fourth degree.  He moved to suppress evidence seized as a result of the stop, and statements made.   At the suppression hearing, Officer Lykins, Officer Wright, and Blanks all testified.  Blanks's testimony was substantially at variance with the testimony of Officers Lykins and Wright, summarized in Part I, above.

{¶ 18}  A week after the suppression hearing, the trial court announced its decision overruling the motion, in open court.   The trial court found that Blanks "seemed to be shifting in his testimony [concerning what he told Officer Wright in regard to whether there was another firearm in the car] and that undermined the credibility of Mr. Blanks in this hearing."   The trial court found the testimony of Officers Lykins and Wright to be "fully credible," and "fully accept[ed] and adopt[ed]" their testimony.

{¶ 19}  In analyzing the circumstances from the point that Officer Wright arrived, the trial court made the following findings of fact and conclusions of law, orally, from the bench:

Officer Wright arrives at the scene and this Court finds by preponderance of the evidence he then asks Mr. Blanks who is still in the vehicle is there anything in the car that he should be

aware of? Mr. Blanks says, magazine in the console and then he gives conflicting statements as to whether or not there is a gun in the car. These statements made by the defendant, he's still in the car, are statements made while he was not in custody, he was not under arrest or the equivalent of arrest therefore the *Miranda* [*v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)] rights do not reply [sic] to those statements.

Officer Wright, this Court finds, then recovers the magazine from the console and then Mr. Blanks and the other passenger are removed from the vehicle, they're patted down and Mr. Blanks is standing in front of the Mazda. And he then gives consent, in fact, Mr. Blanks testified he did give consent to the search of the vehicle and the Court finds that consent by clear and convincing evidence he voluntarily gave consent to the search of the vehicle. And he tells, this Court finds, that he tells Officer Likens [sic] that there will probably be a gun underneath the seat.

Now, this statement, although at this point in time Mr. Blanks was being detained, that temporary detention did not arise [sic] to the level of custody or the equivalent of being under arrest and therefore, again, *Miranda* doesn't apply with regard to his statement that they would probably find a gun under the seat.

So pursuant to that consent, the Officer Likens [sic] goes into the car and recovers the gun from underneath the seat so that was a valid search of the car pursuant to a valid consent.

Mr. Blanks is then arrested. Then he volunteers, not the result of any questioning, the gun and stuff are mine but they're legit and since they are volunteered statements, again, *Miranda* doesn't apply. And finally the Court finds that Mr. Blanks throughout this period was not being detained for an unreasonable period of time. And therefore, for all of those reasons the motion

to suppress is overruled.

**{¶ 20}** There is evidence in the record to support the trial court's findings of fact.

**{¶ 21}** Blanks then entered into a plea agreement with the State wherein he pled no contest to Improper Handling of a Firearm in a Motor Vehicle, and the Carrying a Concealed Weapon count was dismissed. The trial court imposed community control sanctions as a sentence.

**{¶ 22}** From his conviction and sentence, Blanks appeals.

## III.  Blanks's Statement that the Firearm Found Under the Driver's Seat and "Stuff" Were His Was Not the Result of Interrogation, but Volunteered; Therefore, *Miranda* Does Not Apply, and that Statement Was Not Subject to Suppression

**{¶ 23}** Blanks's First Assignment of Error is as follows:

THE TRIAL COURT ERRED WHEN IT DID NOT SUPPRESS THE STATEMENTS

OF THE APPELLANT MADE AFTER HE WAS ARRESTED.

**{¶ 24}** In this assignment of error, Blanks argues that as, or after, he was arrested and placed in handcuffs, Officer Lykins asked him a question to which Blanks responded that the firearm Lykins had retrieved from under the driver's seat was his. Because this statement was the result of custodial interrogation, before *Miranda* warnings had been given, Blanks argues that it should have been excluded, under the authority of *Miranda*.

**{¶ 25}** Officer Lykins's testimony concerning the sequence of events leading up to Blanks's statement that the gun found under the seat and "stuff" were his, "they're legit," was not always entirely clear. Officer Wright testified that he did not hear Blanks make the statement. At the conclusion of the cross-examination of Officer Lykins, the trial court asked Lykins the

following questions germane to this issue:

      THE COURT: Just one question before we do redirect and then we need to take our break.

      So the statement you've testified the Defendant made about the magazine, "They're mine. They're legit," first of all, was it the statement the magazines and the gun are mine and they're legit, or what was the complete statement?

      THE WITNESS: He made the statement – he goes, "it's the" – "The gun and the stuff" – "The gun and the stuff are mine. They're legit." And we assumed he was talking about the magazine at that point.

      THE COURT: All right. And this was made before or after he was formally arrested?

      THE WITNESS: This would have been – I would say after – once we found the firearm, he was placed into custody at that point and it was I think as he was being handcuffed or right after he was handcuffed he made that statement.

      THE COURT: All right. And the – and had you asked him anything or stated to him anything immediately before he made this statement of the gun and stuff, "They're mine. They're legit?"

      THE WITNESS: I do not recall asking him any statement [sic] prior to that. I'm – the way I remember it, it was as he was being placed under arrest or immediately after being placed under arrest.

{¶ 26} Officer Lykins never expressly testified, in contradiction to his above testimony that he did not recall asking Blanks anything preceding Blanks's statement about his ownership

of the gun and "stuff," that this statement by Blanks was in response to a question from Lykins. Therefore, the trial court could find, as it did, that Blanks's statement was not in response to questioning, so that the restrictions of *Miranda* do not apply to it.

{¶ 27}  Blanks's First Assignment of Error is overruled.

## IV.  The Magazine Found in the Car Was Not Found as the Result of a Search, and the Firearm Found in the Car Was the Result of a Consensual Search

{¶ 28}  Blanks's Second Assignment of Error is as follows:

ALL EVIDENCE SEIZED SHOULD HAVE BEEN SUPPRESSED BECAUSE THE OFFICERS DID NOT HAVE A REASONABLE, ARTICULABLE SUSPICION THAT THE CAR CONTAINED CONTRABAND.

{¶ 29}  In support of this assignment of error, Blanks first argues that the magazine was found as the result of an unlawful search of the car.  The trial court found that Officer Wright was told of the existence of the magazine in response to his question whether there was anything in the car that Wright should be aware of.  There is evidence in the record to support this finding. Wright testified that Blanks opened the console and removed the magazine.  The magazine was not found as the result of a search.  Although Blanks argues that Officer Lykins's written report is inconsistent with Officer Wright's testimony on this subject, Officer Lykins was not present when Wright found the magazine, and the trial court was entitled to credit Officer Wright's testimony on this subject.

{¶ 30}  Blanks next argues that the subsequent search of the Mazda was not protected by

his consent:

> The State may argue that the Appellant consented to the search. However, "[A]ny consent to search obtained during an unlawful detention is tainted and may be invalid. [*State v.*] *Retherford* [93 Ohio App.3d 586, 639 N.E.2d 498 (2d Dist. 1994)]. For such consent to be voluntary, the totality of the circumstances must demonstrate that a reasonable person would believe that he or she had the freedom to answer further questions and could, in fact, leave." *State v. White*, 2d Dist. Montgomery No. 25396, 2013-Ohio-3027.

{¶ 31} When Blanks gave his consent to search the Mazda, he was standing in front of it, not in handcuffs. The trial court concluded that he was not in custody, the functional equivalent of an arrest, at this time. We agree. A reasonable person in Blanks's position at this time would have believed himself in detention during a traffic stop that had become an investigative stop; he would not have believed himself to be in custody, the functional equivalent of an arrest.

{¶ 32} In the case Blanks cites, *State v. White*, we held that consent was vitiated because a traffic stop had become unreasonably prolonged. For the reasons set forth in Part V, below, we conclude that the stop in the case before us was not unreasonably prolonged.

{¶ 33} Blanks's Second Assignment of Error is overruled.

## V. The Stop Was Not Unreasonably Prolonged

{¶ 34} Blanks's Third Assignment of Error is as follows:

ALL EVIDENCE SEIZED SHOULD HAVE BEEN SUPPRESSED BECAUSE THE

DURATION OF THE TRAFFIC STOP WAS UNCONSTITUTIONALLY PROLONGED.

**{¶ 35}** In support of this assignment of error, Blanks argues that the purpose of the stop was to issue a traffic citation, and Officer Lykins failed to diligently issue the citation, resulting in an unconstitutional prolongation of the stop.

**{¶ 36}** Unquestionably, the stop began as a routine traffic stop. But it turned into something more than that as soon as Lykins became aware that there was an outstanding warrant for the arrest of the passenger, Anderson. Long before twenty minutes had elapsed, which Lykins testified was the typical duration of a traffic stop, he became aware that it was going to be necessary to remove Anderson from the car and arrest him. Also well within the typical duration of a routine traffic stop, all three occupants had denied having any firearms, Anderson had then admitted that he had a firearm in his waistband, and that firearm was retrieved.

**{¶ 37}** Still within the duration of a typical traffic stop, Officer Wright was told of the presence of the loaded magazine in the center console, that magazine was produced and given to Wright, and it was found not to fit the weapon that had been retrieved from Anderson's waistband. Both officers testified that the presence of the loaded magazine not fitting Anderson's weapon, combined with Blanks's shifting, inconsistent answers to their questions whether there was another firearm in the car, led the officers to be concerned that there may have been another firearm in the car. We conclude that under the circumstances, this concern that the officers had for their safety was reasonable.

**{¶ 38}** It was at this point that the duration of the stop began to exceed what Officer Lykins had testified was the usual duration of a traffic stop. By this point, also, the stop had clearly evolved into something more than a routine traffic stop. We conclude that it was reasonable for the officers to seek consent to search the car in order to determine whether there was a firearm in the car, before they issued the traffic citation, turned their backs to Blanks and

his other passenger, and proceeded to drive away with their arrested co-occupant, Anderson.

{¶ 39}   Furthermore, what begins as a traffic stop may continue beyond the normal duration of a traffic stop if a police officer has acquired a reasonable articulable suspicion of other criminal activity.   *State v. Nelson*, 2d Dist. Montgomery No. 22718, 2009-Ohio-2546, ¶ 40.  The presence of the loaded magazine in the center console of the Mazda gave Officers Lykins and Wright, at the very least, a reasonable and articulable suspicion of a weapons violation, to which they were not required to turn a blind eye and walk away, just because the encounter began as a routine traffic stop.

{¶ 40}   Blanks's Third Assignment of Error is overruled.


## VI.   Conclusion

{¶ 41}   All of Blanks's assignments of error having been overruled, the judgment of the trial court is Affirmed.


. . . . . . . . . . . . .

FROELICH, P.J., and WELBAUM, J., concur.




Copies mailed to:

Mathias H. Heck
Matthew T. Crawford

William O. Cass, Jr.
Hon. Dennis J. Langer