The STATE of Ohio, Appellee,

v.

BYRD, Appellant.

[Cite as *State v. Byrd,* 185 Ohio App.3d 30, 2009-Ohio-5606.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 23285.

Decided Oct. 23, 2009.

</div>

John J. Danish, Dayton Law Director, and Stephanie L. Cook and Mary E. Welsh, for appellee.

Adelina E. Hamilton, for appellant.

WOLFF, Judge.

{¶ 1} Kimberly Byrd appeals from her conviction and sentence in Dayton Municipal Court following a no-contest plea to one count of possessing drug paraphernalia.

{¶ 2} In two related assignments of error, Byrd contends that the trial court erred in overruling her motion to suppress the evidence against her. She claims police illegally detained her when they exceeded the scope and purpose of a traffic stop. She also asserts that a search of her purse was unlawful and that statements she made immediately after the search should have been suppressed.

{¶ 3} The record reflects that Byrd was a passenger in a pickup truck stopped by Dayton police officer William Jones on March 7, 2008. During a suppression hearing, Jones recalled that the weather that day involved "blizzard-like conditions." He testified that he saw the pickup truck make a u-turn in the middle of the street near Valerie Arms and Philadelphia Drive in Dayton. He ran the truck's license plate and discovered that it was registered to an owner with a Troy, Ohio address. Jones then watched as the truck's driver turned without signaling. Jones and his partner, Officer Elizabeth Alley, initiated a traffic stop for the illegal turn.

{¶ 4} Upon approaching the stopped truck, Jones noticed that it contained three occupants, one of whom was Byrd. The male driver of the truck stated that he was in the area to pick up Byrd's brother. When Jones pointed out that the truck lacked room for a fourth occupant, Byrd and the other two occupants explained that "they were just [t]here to pick up * * * her brother and everything and just kind of hang out and they didn't know where they were going and [were] just going to pick him up and then drop him off." When Jones inquired further, the driver stated that his plan was to leave Byrd at an unspecified apartment on Valerie Arms with people she did not know while he drove her brother to Enon, Ohio. He then planned to return and pick her up. Jones found this story to be "far fetched," particularly given the poor weather conditions and the fact that the truck's occupants did not know where the apartment was located.

{¶ 5} As part of the traffic stop, Jones and his partner requested identification from the driver and the two passengers. The driver and a female passenger produced identification, which Jones used to determine that neither of them had any warrants. Byrd was not carrying any identification, but she told the officers her name, Social Security number, and date of birth. Because she lacked identification, Byrd was removed from the truck and placed in Jones's police cruiser while the officers attempted to confirm her identity.

{¶ 6} Jones ran the information that Byrd had provided through his computer and found no warrants. Byrd's name matched the Social Security number and date of birth displayed on the computer. Her hair color, eye color, height, and weight also were consistent with the information displayed on the computer. Jones nevertheless doubted whether Byrd was being honest about her identity because her answers to his questions about her arrest record and driver's license history did not match the information shown on the computer. During the suppression hearing, Jones explained that people sometimes give police another family member's name, Social Security number, and date of birth. In such cases, physical characteristics such as height, weight, eye color, and hair color may match closely due to the family relationship. Thus, in light of Byrd's incorrect answers to questions about her arrest record and driver's license history, Jones decided to transport her to jail for fingerprint identification.

{¶ 7} Before transporting Byrd to jail, the officers retrieved from the pickup truck a book bag containing her purse. They then asked her whether her identification might be in the purse. Byrd responded that she did not know. After Byrd refused the officers' request for consent to search the purse, they began transporting her to jail. While en route, Byrd changed her mind. She admitted that her identification was in the purse and gave the officers permission to retrieve it. Upon doing so, the officers discovered syringes, an empty heroin

capsule, a spoon, and a little straw. Based on his experience, Jones recognized these items as instruments used by heroin abusers. In addition to the drug paraphernalia, the officers also discovered Byrd's identification, which confirmed that she was who she had claimed to be.

{¶ 8} The officers then immediately advised Byrd of her *Miranda* rights. While still in the police cruiser, she admitted having a history of drug abuse. She also told them that the driver of the pickup truck was going to a residence on Valerie Arms to buy drugs. Jones and his partner proceeded to transport Byrd to jail. She was charged with possession of drug paraphernalia and possession of drug-abuse instruments. Following a hearing, the trial court summarily over-ruled her motion to suppress. Byrd then entered a no-contest plea to a negotiated minor-misdemeanor charge. In light of her incarceration on an unrelated charge out of Clark County, the trial court sentenced her to time served. This timely appeal followed.

{¶ 9} Before proceeding to the merits of Byrd's arguments, we pause to address the state's claim that her appeal is moot. In support of its mootness argument, the state points out that Byrd was given no jail time and no fine. It also contends that she has not presented evidence of a collateral legal disability or a loss of civil rights due to her conviction. In response, Byrd advances several arguments why her appeal is not moot.

{¶ 10} Upon review, we agree with Byrd that mootness does not apply here. It is well settled that "where a criminal defendant, convicted of a misdemeanor, voluntarily satisfies the judgment imposed upon him or her for that offense, an appeal from the conviction is moot unless the defendant has offered evidence from which an inference can be drawn that he or she will suffer some collateral legal disability or loss of civil rights stemming from that conviction." *State v. Golston* (1994), 71 Ohio St.3d 224, 226, 643 N.E.2d 109, citing *State v. Wilson* (1975), 41 Ohio St.2d 236, 70 O.O.2d 431, 325 N.E.2d 236, and *State v. Berndt* (1987), 29 Ohio St.3d 3, 29 OBR 173, 504 N.E.2d 712.

{¶ 11} In the present case, the trial court sentenced Byrd to "time served," an apparent reference to the period of time she spent in jail before posting bond. On appeal, Byrd claims this period of time was two days. Although the record does not reveal the precise amount of time Byrd spent in jail, it does show that she ultimately posted bond. Therefore, she apparently spent some time in jail before doing so. Given that Byrd spent this time in jail following her arrest on drug-related charges, we cannot say that she "voluntarily" served the time, which ultimately constituted her entire sentence.

{¶ 12} Where a defendant is sentenced only to time involuntarily served prior to conviction, the mootness doctrine does not apply. *State v. Benson* (1986),

29 Ohio App.3d 109, 110, 29 OBR 123, 504 N.E.2d 77. If the rule were otherwise, "a defendant who receives credit for time served prior to trial that is equal to his sentence * * * could be effectively blocked from ever appealing his conviction." Id.; see also *Sibron v. New York* (1968), 392 U.S. 40, 51–53, 88 S.Ct. 1889, 20 L.Ed.2d 917 (recognizing that mootness does not apply where it is impossible for a defendant to pursue an appeal before expiration of his sentence). Accordingly, we conclude that Byrd's appeal is not moot and turn to the merits of her arguments.

{¶ 13} In her first assignment of error, Byrd contends that officers Jones and Alley unlawfully expanded the scope and duration of the traffic stop when they decided to transport her to jail for fingerprinting. Once they determined the identity of the pickup truck's other two occupants and confirmed the identifying information that she orally had provided, Byrd argues that the officers had no legal basis to continue her detention by taking her to jail for fingerprint identification. In response, the state asserts that the story told by Byrd and the other occupants of the truck gave the officers reasonable, articulable suspicion of criminal activity. Therefore, the state maintains that the officers had a sufficient basis for detaining Byrd to ascertain her identity. Moreover, despite the fact that Byrd's name, physical characteristics, Social Security number, and date of birth matched what was displayed on the officers' computer, the state contends that her incorrect answers to questions about her arrest record and driver's license history gave them a reasonable basis to question her identity and to transport her to jail to for fingerprint identification.

{¶ 14} Byrd's second assignment of error flows logically from her first. In her second assignment of error, she contends that her consent to a search of her purse was invalid because the officers obtained the consent while unlawfully transporting her from the scene of the traffic stop to jail. Therefore, she claims the trial court should have suppressed the incriminating items found in the purse as well as the statements she made to the officers immediately after they discovered the drug paraphernalia. In response, the state insists that Byrd's consent to a search of her purse was freely and voluntarily given. As a result, it contends that the trial court properly overruled her suppression motion.

{¶ 15} A trial court's suppression ruling presents a mixed question of fact and law. *State v. McNamara* (1997), 124 Ohio App.3d 706, 710, 707 N.E.2d 539. We accept the trial court's view of the facts, provided it is supported by competent, credible evidence, because "[w]hen considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *State v. Burnside,* 100 Ohio St.3d 152, 2003–Ohio–5372, 797 N.E.2d 71, ¶ 8. But we determine independently whether the evidence satisfies the applicable legal

standard. *State v. Mackey,* Montgomery App. No. 22244, 2008–Ohio–3621, 2008 WL 2809226, ¶ 9.

{¶ 16} In the present case, the trial court made no findings of fact. Nevertheless, the uncontroverted testimony of officers Jones and Alley, the only two witnesses to testify at the suppression hearing, fully supports the factual background set forth above. Therefore, the crucial issue before us is whether under those facts the officers violated the Fourth Amendment by beginning to transport Byrd to jail for fingerprint identification. Based on our review of the record, we conclude that they did. Byrd plainly did not consent to being transported to jail for fingerprinting. Nor did the officers have judicial authorization to transport her. At best, the officers may have had articulable suspicion that Byrd and her companions were engaged in some criminal activity and that she might not have been who she claimed. In *Hayes v. Florida* (1985), 470 U.S. 811, 105 S.Ct. 1643, 84 L.Ed.2d 705, the United States Supreme Court held that the Fourth Amendment prohibits transporting a suspect to the station house for fingerprinting absent probable cause, the suspect's consent, or prior judicial authorization. Id. at 814–816, 105 S.Ct. 1643. While articulable suspicion may be enough to justify a brief detention in the field for fingerprinting, it does not justify the involuntary removal of a suspect to the police station, which is sufficiently akin to arrest to require probable cause. Id. at 816, 105 S.Ct. 1643.

{¶ 17} In the present case, the officers checked the identification of the other two occupants of the pickup truck and found no warrants. The officers also ran Byrd's information through their computer and found nothing suspicious. Byrd's name matched the Social Security number and date of birth displayed on the computer. Her hair color, eye color, height, and weight also were consistent with the information displayed on the computer. Jones testified, however, that he doubted Byrd's identity because her responses to unspecified questions about her arrest record and driver's license history did not match the information shown on the computer.[1] In our view, this may have given Jones articulable suspicion to question Byrd's identity, but it did not give him probable cause to believe she was involved in criminal activity. Thus, absent Byrd's consent, which she did not give, the Fourth Amendment precluded the officers from transporting her to jail for fingerprint identification.

{¶ 18} Largely because Byrd's transportation to jail was unlawful, her consent to a search of her purse while en route was invalid. It is beyond dispute

---

1. It is worth noting that Jones could not recall how inconsistent Byrd's responses were with the information displayed on his computer. He could not remember, for example, whether she was merely off by a year when answering questions about her arrest record and driver's license history or whether the inconsistencies were more substantial. He recalled only that her answers "did not correlate" with the information on his computer.

that an illegal detention nullifies any consent that is a product of the detention. *Florida v. Royer* (1983), 460 U.S. 491, 501, 103 S.Ct. 1319, 75 L.Ed.2d 229. Here Byrd initially refused to consent to a search of her purse at the scene of the traffic stop. Only while being transported to jail did she change her mind and give the officers permission to look inside the purse. On these facts, we harbor no doubt that Byrd's consent was a product of her illegal detention. Therefore, the trial court should have suppressed the incriminating items found inside her purse.

{¶ 19} The trial court also should have suppressed the incriminating statements she made immediately after police found the drug paraphernalia. Although the officers advised Byrd of her *Miranda* rights before she made the statements, *Miranda* warnings alone will not necessarily purge the taint of an unlawful seizure. *Brown v. Illinois* (1975), 422 U.S. 590, 603–604, 95 S.Ct. 2254, 45 L.Ed.2d 416. For incriminating statements to be admissible, they must be " 'an act of free will [sufficient] to purge the primary taint of the unlawful invasion.' " *Kaupp v. Texas* (2003), 538 U.S. 626, 632–633, 123 S.Ct. 1843, 155 L.Ed.2d 814, quoting *Wong Sun v. United States* (1963), 371 U.S. 471, 486, 83 S.Ct. 407, 9 L.Ed.2d 441. In the present case, Byrd made her incriminating statements in the back of a police cruiser while unlawfully being transported to jail and immediately after the officers had discovered drug paraphernalia in her purse. The state has not shown that the taint of the unlawful seizure had dissipated when Byrd made her statements. See *Brown*, 422 U.S. at 604, 95 S.Ct. 2254, 45 L.Ed.2d 416. Therefore, we conclude that the statements were derivative of her unlawful seizure and should have been suppressed.

{¶ 20} Based on the reasoning set forth above, we sustain Byrd's assignments of error, reverse the trial court's judgment, and remand the cause for further proceedings.

Judgment reversed
and cause remanded.

FAIN and FROELICH, JJ., concur.

WILLIAM H. WOLFF JR., J., retired, of the Second District Court of Appeals, sitting by assignment.