[Cite as *State v. Glenn*, 2016-Ohio-4887.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 26776 |
| | : | |
| v. | : | T.C. NO. 15CRB2908 |
| | : | |
| DAMON L. GLENN | : | (Criminal Appeal from |
| | : | Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the ___8th___ day of _____July_____, 2016.

. . . . . . . . . . .

MATTHEW KORTJOHN, Atty. Reg. No. 0083743, Assistant City Prosecutor, 335 W. Third Street, Rm. 372, Dayton, Ohio 45402
      Attorney for Plaintiff-Appellee

ADAM JAMES STOUT, Atty. Reg. No. 0080334, 2600 Far Hills Avenue, Suite 315, Dayton, Ohio 45419
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} Damon Glenn was found guilty, after a bench trial in the Dayton Municipal Court, of two counts of domestic violence and one count of criminal damaging. The trial court sentenced him to concurrent sentences totaling 180 days, with 56 days of jail time credit. Glenn appeals from his convictions.

## I. Factual and Procedural History

{¶ 2} The State's evidence at trial established the following facts:

{¶ 3} Glenn and Lateefah Shabazz have been in an on again/off again relationship for approximately 15 years, and they have a child together. The two have lived together sporadically during that time period, most recently from March 2014 to February 2015 in a rented single-family home. In February 2015, Shabazz had Glenn removed from the lease due to threats and domestic violence. Shabazz testified that Glenn removed items from her home and began staying with his mother. Shabazz allowed Glenn to "come over and see about his son and as long as he act[ed] civilized he was able to speak with myself also." (Tr. 18.) Shabazz stated that, on May 13, 2015, only she and her son lived at her residence; Glenn did not have a key to the house.

{¶ 4} On the evening of May 13, 2015, Glenn came to Shabazz's residence to see his child. Glenn was initially civil toward Shabazz, but within 15 minutes, he started to call her names, curse at her, and make threats. While they were in Shabazz's living room, Glenn threatened that he would "make [Shabazz's] life a living hell" and kill her if she left him, that he would take her son away from her, and that he would punch her in the face if she called the police. Shabazz testified that she believed Glenn's threats to hurt her, because he had previously assaulted her and engaged in stalking behavior.

{¶ 5} After Glenn called Shabazz names and threatened her, Shabazz told him that she was going to call the police. Glenn grabbed Shabazz by the neck with both hands, applied pressure, and shook her. He then "mushed" her in the face, applying pressure against her jaw with his fist. Glenn then appeared to calm down, and he went outside.

**{¶ 6}** Shabazz went into her bedroom. Glenn came back inside and followed Shabazz into the bedroom, carrying a cell phone charger. As Glenn looked around for his phone, he hit Shabazz in the arm with the cord of the cell phone charger, causing a welt. After Glenn hit her with the charger, he again walked out of the house. Shabazz took a couple of bags with some of Glenn's belongings, put them outside her house, and locked the door to the house. Shabazz called the police.

**{¶ 7}** Glenn again wanted to come inside, and he began banging on the front door and calling to Shabazz to let him in. Shabazz yelled to him to go home to his mother's house and that his things were outside. Glenn also banged on the outside window to Shabazz's bedroom, breaking it. (The bedroom window was accessible from the front porch of the house.) The police arrived while Glenn was still at Shabazz's residence.

**{¶ 8}** Glenn testified on his own behalf. He stated that he went to Shabazz's residence after picking up their child from daycare in order to bring their son home. Glenn stated that he tried to call Shabazz, but she did not answer her cell phone. When he got to the house, he knocked on the door and rang the doorbell, but she did not answer the door. Glenn stated that he knocked on her bedroom window, because he thought she might be asleep; the window broke as he was knocking to get Shabazz's attention. Glenn testified that Shabazz came to the door a minute or two after the window broke. Glenn stated that they began to argue about a cell phone that he had recently upgraded. After about ten minutes, Glenn got some of his belongings from her home and went to a neighbor's home.

**{¶ 9}** Glenn denied threatening Shabazz, putting his hands around her throat, or striking Shabazz with a cell phone charger. Glenn stated that he never possessed a cell

phone charger while he was in the house on May 13. Glenn indicated that he "moved her out of the way" with his forearm when Shabazz was blocking his exit from the house.

**{¶ 10}** The following day (May 14), Glenn was charged by complaint with five offenses: (1) domestic violence, in violation of R.C. 2919.25(A); (2) assault, in violation of R.C. 2903.13(A); (3) domestic violence, in violation of R.C. 2919.25(C); (4) aggravated menacing, in violation of R.C. 2903.21(A); and (5) criminal damaging, in violation of R.C. 2909.06(A)(1). After a bench trial on July 7, 2015, the trial court found Glenn guilty of all counts.

**{¶ 11}** The trial court proceeded to sentencing immediately after the trial. Defense counsel told the court that he believed the offenses were allied offenses of similar import and asked the court to merge them for sentencing. The State initially agreed with defense counsel that the first four charges were allied offenses of similar import, and it asked the court to sentence Glenn on domestic violence, in violation of R.C. 2919.25(A), a first-degree misdemeanor. The prosecutor further stated, "We would ask the court not [to] pronounce any sentence on the assault charge or the aggravated menacing since he can't be sentenced on both." The trial court replied that it was planning to sentence Glenn on domestic violence, aggravated menacing, and criminal damaging. In response, the State asked that the court sentence Glenn for both domestic violence charges and criminal damaging.

**{¶ 12}** The court orally imposed sentences of 180 days for domestic violence (count 1, a first-degree misdemeanor), 30 days for domestic violence (count 3, a fourth-degree misdemeanor), and 90 days for criminal damaging, to be served concurrently. Glenn received 56 days of jail time credit. The court stated that the fine and court costs

were suspended.   The court ordered Glenn to have no contact with Shabazz.

{¶ 13} On July 9, 2015, the trial court filed three separate "commitment orders," which reflected the sentences (with jail time credit) orally imposed on July 7.   On July 14, 2015, an acting judge filed a "final appealable entry and order," which again reflected the oral jail sentences; this document identified all three counts as domestic violence, although the third charge was listed as a violation of R.C. 2909.06(A)(1), the criminal damaging statute.   Neither the commitment orders nor the purported final appealable order included the no-contact requirement.

{¶ 14} Glenn appeals from his convictions.[1]   He raises two assignments of error, which we will address in reverse order.

## II. Sufficiency and Manifest Weight – Criminal Damaging

{¶ 15} In his second assignment of error, Glenn claims that his conviction for criminal damaging was based on insufficient evidence and was against the manifest weight of the evidence.

---

[1] We find no indication in the record that Glenn moved to stay his sentences pending appeal, and based on the length of his sentences and the amount of jail time credit, it is likely that Glenn has served his sentences.   In general, " '[w]here a criminal defendant, convicted of a misdemeanor, voluntarily satisfies the judgment imposed upon him or her for that offense, an appeal from the conviction is moot unless the defendant has offered evidence from which an inference can be drawn that he or she will suffer some collateral legal disability or loss of civil rights stemming from that conviction.' " *State v. Byrd*, 185 Ohio App.3d 30, 2009-Ohio-5606, 923 N.E.2d 161, ¶ 10 (2d Dist.), quoting *State v. Golston*, 71 Ohio St.3d 224, 226, 643 N.E.2d 109 (1994).

The State has not asserted that Glenn's sentence is moot, and the mootness doctrine does not apply where a defendant is sentenced to time served prior to trial, *see Byrd* at ¶ 12, which is the case with one of Glenn's domestic violence convictions.   And, it appears that appellate counsel was appointed after Glenn likely completed his sentence for criminal damaging; trial counsel expressly stated that he would not represent Glenn in his appeal.   In an abundance of caution, and in the absence of any assertion of mootness by the State, we will address Glenn's appeal.

{¶ 16} "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶ 17} In contrast, "a weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *Wilson* at ¶ 12. *See Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 19 (" 'manifest weight of the evidence' refers to a greater amount of credible evidence and relates to persuasion"). When evaluating whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins*, 78 Ohio St.3d at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 18} Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997). However, we may determine which of several competing inferences suggested by the evidence should be preferred. *Id.* The fact that the evidence is subject to different interpretations does not render the conviction against the

manifest weight of the evidence. *Wilson* at ¶ 14. A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin* at 175.

{¶ 19} R.C. 2909.06(A)(1) provides: "No person shall cause, or create a substantial risk of physical harm to any property of another without the other person's consent: (1) Knowingly, by any means[.]" "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶ 20} On appeal, Glenn claims that there was insufficient evidence to convict him of criminal damaging, because he could come and go from Shabazz's house as if he still lived there, and he continued to have property at her residence. Glenn further claims that his conviction was against the manifest weight of the evidence, because he "had consent by virtue of being a resident" and the breaking of the window was nothing more than an accident while he was trying to get Shabazz's attention.

{¶ 21} The evidence at trial established that, on May 13, 2015, Shabazz was the sole tenant of her home. Shabazz testified that she and Glenn had both been on the lease for the rental property through February 2015. In February 2015, Shabazz had asked her landlord to remove Glenn from the lease, and that change was effective as of March 2015. Shabazz testified that, although Glenn had some personal property at the house, he no longer lived there in May 2015 and he was residing with his mother. Glenn no longer had a key to the residence. Shabazz stated that Glenn was given permission to see their child at her house, and he could speak with her if he acted "civilized."

Accordingly, the State's evidence indicated that Glenn was not a resident of Shabazz's home and he did not have a right to damage the home by virtue of a possessory interest in the property.

**{¶ 22}** Glenn's testimony did not contradict Shabazz's testimony regarding his lack of residency at the house. Glenn testified on direct examination that he came to Shabazz's home at her invitation. On cross-examination, Glenn agreed that he and Shabazz had lived together as boyfriend/girlfriend in the past, but that he was not on the lease on May 13, 2015, when the incident happened, and he was not living at the house. After Glenn asserted that he had a property interest in the home, he explained that he had some personal property in the house, such as a flat screen television that he had just purchased. Even accepting that Glenn had some personal property remaining in Shabazz's house, there is no evidence to support Glenn's assertion that he had any right to damage the bedroom window as a resident of the home.

**{¶ 23}** Further, the trial court's conclusion that Glenn knowingly damaged the bedroom window of Shabazz's residence was neither based on insufficient evidence nor against the manifest weight of the evidence. Shabazz testified that, after she had locked her front door, Glenn banged on her front door and her bedroom window, because he wanted to be let back into the house. Just prior to Glenn's leaving the house, he had lashed out violently against Shabazz. Although Shabazz did not see Glenn break the bedroom window (Shabazz was in her living room at the time), she stated that she heard him on the porch. Shabazz stated that she did not give Glenn permission to break the window.

**{¶ 24}** State's Exhibit 2, which was admitted into evidence, depicts what appears

to be either a single- or double-hung window. The upper sash has a sizeable oval hole, about a quarter of the overall size of the upper sash; cracks in the glass radiate from the hole. Shabazz and Officer Brandon Cartee, the responding officer, identified Exhibit 2 as a photograph of Shabazz's broken bedroom window. Based on the photograph of the window, in conjunction with Shabazz's testimony, the trial court could have reasonably concluded that Glenn struck the window with significant force and that he knowingly caused physical harm to Shabazz's bedroom window, without her consent.

{¶ 25} Glenn testified that he knocked on the window hard in order to get Shabazz's attention after picking up their child from daycare. He stated that he was simply trying to get Shabazz's attention and that he was not attempting to break the window. Upon review of all the evidence at trial, we cannot conclude that Glenn's conviction for criminal damaging was against the manifest weight of the evidence.

{¶ 26} Glenn's second assignment of error is overruled.

### III. Allied Offenses of Similar Import

{¶ 27} Glenn's first assignment of error claims that the trial court erred in sentencing him to both 180 days for aggravated menacing and to 30 days for domestic violence, a fourth-degree misdemeanor, because the State elected to sentence him only on domestic violence and because aggravated menacing and domestic violence are allied offenses of similar import.

{¶ 28} Ohio's allied offense statute, R.C. 2941.25, provides that:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be

convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

**{¶ 29}** " 'As a practical matter, when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered.' " *State v. Earley*, 145 Ohio St.3d 281, 2015-Ohio-4615, 49 N.E.3d 266, ¶ 12, quoting *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 31.

**{¶ 30}** Glenn's claim that the trial court erred in failing to merge aggravated menacing with the fourth-degree misdemeanor domestic violence offense must fail, because the record does not reflect that Glenn was sentenced on the aggravated menacing charge. The court orally imposed sentence on the two domestic violence charges and on criminal damaging. The trial court's three written "commitment entries" and its subsequent purported final appealable order, all of which were signed by the judge and filed with the clerk, also addressed only the domestic violence and criminal damaging charges.

**{¶ 31}** The record contains handwritten notes for each of the five charged offenses. The notes for aggravated menacing include a notation made on July 7 that Glenn was found guilty at trial and received a sentence of 180 days at the Montgomery County Jail, with credit for 56 days served and with the fine and court costs suspended. These handwritten notes were not filed and time-stamped. Because the trial court speaks through its journal entries, *e.g., State v. Hill*, 2d Dist. Montgomery No. 26581, 2015-Ohio-5166, ¶ 48, these handwritten notes do not constitute a sentence for aggravated menacing.

**{¶ 32}** Because Glenn was not sentenced for aggravated menacing, his first assignment of error is overruled.

## IV. Conclusion

**{¶ 33}** The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

HALL, J. and WELBAUM, J., concur.

Copies mailed to:

Matthew Kortjohn
Adam James Stout
Hon. Daniel G. Gehres